No. 88,325

THE CITY OF WICHITA, *Appellee,* v. ROBERT L. HACKETT, *Appellant.*

69 P.3d 621

 Opinion filed May 30, 2003. 

*Gary W. Owens,* of Law Office of Roger L. Falk, & Associates, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Sharon L. Dickgrafe,* assistant city attorney, argued the cause, and *Gary E. Rebenstorf,* city attorney, was with her on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: A Sedgwick County District Court convicted Robert L. Hackett of one count of driving under the influence (DUI) in violation of Section 11.38.150 of the Code of the City of Wichita (City). At the time of the violation, he was riding a bicycle. After Hackett's appeal to the Court of Appeals, we transferred the case on our own motion pursuant to K.S.A. 20-3018(c). The issues on appeal, and this court's accompanying holdings, are as follows:

1. Is it permissible for cities to adopt ordinances prohibiting the operation of bicycles while under the influence of alcohol? Yes.

2. Does a conviction for DUI as defined under the City ordinance qualify as a conviction under K.S.A. 8-1567? No.

3. Is the City's DUI ordinance unconstitutionally vague? No.

Accordingly, the district court is affirmed.

FACTS:

On March 3, 2000, at approximately 9 p.m., Wichita Police Officer Keith Fort, a member of the city's DUI task force, responded to his dispatcher's report of an accident involving an automobile and a bicycle. Upon arrival at the scene, Officer Fort discovered there had been no collision. Hackett had simply fallen from his bicycle when crossing the intersection of Maple and Tracy and had suffered minor injuries. After EMS attended to Hackett's injuries, Fort approached him to investigate the accident.

During questioning, Officer Fort noticed Hackett smelled of alcohol, had bloodshot eyes, and slurred his words when describing his accident. Fort therefore asked Hackett to perform several field sobriety tests. After Hackett had failed three tests, Fort placed him under arrest for operating his bicycle while under the influence of alcohol, contrary to Wichita City Ordinance 11.38.150, and failure

to license his bicycle, contrary to Wichita City Ordinance 11.48.020. Later, Hackett submitted to a breath test at the Sedgwick County Jail. It disclosed a blood alcohol content of .204%, approximately two and one-half times the limit allowed by the city's ordinance.

On August 9, 2001, the Wichita Municipal Court found Hackett guilty of DUI. Hackett timely appealed to the Sedgwick County District Court where, following a bench trial, he was convicted of one count of DUI.

ANALYSIS:

Issue 1: *Is it permissible for cities to adopt ordinances prohibiting the operation of bicycles while under the influence of alcohol?*

According to Hackett's interpretation of the statutes, the City was prohibited from proscribing his operation of a bicycle while under the influence of alcohol. He claims that since K.S.A. 8-1485 defines "vehicles," the City is prohibited from expanding this definition to include bicycles. Our review of this issue is unlimited, since interpretation of statutes and ordinances is a question of law. *State v. Engles*, 270 Kan. 530, 532-33, 17 P.3d 355 (2001).

We first examine the relevant statutes and ordinances. The city ordinance under which Hackett was charged, 11.38.150, is virtually identical to K.S.A. 8-1567. Both proscribe the operation or attempted operation of "any vehicle" while "the alcohol concentration in the person's blood or breath, as measured within 2 hours of the time of operating or attempting to operate a vehicle, is .08 or more."

The chief difference between the Kansas statute and the city ordinance is their definition of "vehicle." K.S.A. 8-1485 defines "vehicle" as "every device in, upon or by which any person or property is or may be transported or drawn upon a highway, *except devices moved by human power* or used exclusively upon stationary rails or tracks." (Emphasis added.) By contrast, City Ordinance 11.04.400 expansively defines a "vehicle" as "every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon sta-

tionary rails or tracks." In short, it does not exclude devices moved by human power.

The City's authority to expand the State's definition of vehicle ostensibly derives from K.S.A. 8-2001, which provides:

"The provisions of this act [Uniform Act Regulating Traffic; Powers of State and Local Authorities] shall be applicable and uniform throughout this state and in all cities and other political subdivisions therein, and no local authority shall enact or enforce any ordinance in conflict with the provisions of this act unless expressly authorized; however, *local authorities may adopt additional traffic regulations which are not in conflict with the provisions of this act*." (Emphasis added.)

Since the City has clearly adopted additional traffic regulations, the question becomes whether City Ordinances 11.38.150 and 11.04.400 "conflict" with K.S.A. 8-1567 and K.S.A. 8-1485. *City of Junction City v. Lee*, 216 Kan. 495, 501, 532 P.2d 1292 (1975), provides guidance on this issue:

"A test frequently used to determine whether conflict in terms exists is whether the ordinance permits or licenses that which the statute forbids or prohibits that which the statute authorizes; if so, there is conflict, but *where both an ordinance and the statute are prohibitory and the only difference is that the ordinance goes further in its prohibition but not counter to the prohibition in the statute, and the city does not attempt to authorize by the ordinance that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict*. [Citation omitted.]" (Emphasis added.)

K.S.A. 8-1567 and K.S.A. 8-1485 do not "expressly authorize" the operation of bicycles by those under the influence of alcohol. They merely fail to proscribe it. Consequently, no conflict exists between city ordinances and state statutes. The city ordinance is valid.

*City of Junction City v. Lee*, 216 Kan. 495, is on point. There, like the instant case, we observed that the language of the city ordinance—which concerned the unlawful use of weapons—was identical to the State criminal statute's, with two exceptions. The city ordinance prohibited a person from merely carrying specifically-listed dangerous weapons, while the state statute made carrying the same weapons a crime only when concealed or carried with the intent to use unlawfully against another. We held that no

conflict existed between the statute and ordinance because one did not forbid what the other permitted; rather, the ordinance was merely more restrictive than the statute. 216 Kan. at 499-502.

Similarly, in *Clemons v. Wilson*, 151 Kan. 250, 98 P.2d 423 (1940), the issue was whether a city ordinance making it illegal to possess gambling devices was in conflict with a state statute declaring it merely to be a nuisance to set up gambling devices. In determining that no conflict existed, we stated: "The fact that the legislature made places where gambling devices are set up nuisances did not prohibit the cities from going further and making their possession an offense. The statute just did not go as far as the ordinance did, that is all." 151 Kan. at 256; see *Blevins v. Hiebert*, 247 Kan. 1, 795 P.2d 325 (1990), and the numerous cases discussed therein at pages 5 through 8 which contain such an analysis with similar results.

In summary, the City of Wichita has the authority to prohibit the operation of bicycles while under the influence of alcohol.

Issue 2: *Does a conviction for DUI as defined under the city ordinance qualify as conviction under K.S.A. 8-1567?*

Hackett's conviction under the city ordinance raises the question whether it also qualifies as a conviction under the Kansas DUI statute, K.S.A. 8-1567. Our interpretation of the statute is a question of law. *Engles*, 270 Kan. at 532-33.

K.S.A. 8-1567(l) provides:

"For the purpose of determining whether a conviction is a first, second, third, fourth or subsequent conviction in sentencing under this section:

(1) 'Conviction' includes being convicted of a violation of this section or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging a violation of this section;

(2) '*conviction' includes being convicted of a violation of a law of another state or an ordinance of any city, or resolution of any county, which prohibits the acts that this section prohibits* or entering into a diversion agreement in lieu of further criminal proceedings in a case alleging a violation of such law, ordinance or resolution." (Emphasis added.)

In a similar fashion, K.S.A. 8-1567(m) provides:

"*Upon conviction of a person of a violation* of this section or a violation *of a city ordinance or county resolution prohibiting the acts prohibited by this section*,

the division, upon receiving a report of conviction, shall suspend, restrict or suspend and restrict the person's driving privileges as provided by K.S.A. 8-1014, and amendments thereto." (Emphasis added.)

These statutes disclose that the legislature intended to limit the consequences of a DUI conviction to those acts proscribed by state law. Operating a bicycle while under the influence, though a violation of the city code, is not a DUI under K.S.A. 8-1567. Such a conviction therefore does not count for state sentencing purposes concerning the instant offense or subsequent offenses.

Issue 3: *Is the City's DUI ordinance unconstitutionally vague?*

Finally, Hackett argues that the city's DUI ordinance is unconstitutionally vague. When reviewing the constitutionality of an ordinance our standard of review is de novo. *Boyles v. City of Topeka,* 271 Kan. 69, 21 P.3d 974 (2001). As the party asserting unconstitutionality, however, Hackett's burden is a weighty one. See *Barrett v. U.S.D. 259,* 272 Kan. 250, 255, 32 P.3d 1156 (2001). This is because we have a duty to preserve the validity of the ordinance and to search for ways to uphold its constitutionality. We must presume that the ordinance is constitutional, resolve all doubts in favor of validity, uphold the ordinance if there is any reasonable way to construe it as constitutional, and before striking the ordinance, we must conclude that it clearly appears to be unconstitutional. *Boyles,* 271 Kan. at 72.

Constitutional attacks based upon vagueness require additional considerations. The ordinance must convey sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding and practice. *Boyles,* 271 Kan. at 72; *State v. Rucker,* 267 Kan. 816, 831, 987 P.2d 1080 (1999). As we stated in *State v. Dunn,* 233 Kan. 411, 418, 662 P.2d 1286 (1983): "A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." Kansas has long held, however, that a statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or having a

settled meaning in law. *City of Wichita v. Lucero,* 255 Kan. 437, 451, 874 P.2d 1144 (1994).

In addition to asking whether the proscribed conduct is adequately defined, this court has recognized that a second inquiry is appropriate, *i.e.,* " 'whether the ordinance adequately guards against arbitrary and discriminatory enforcement.' " *State v. Rucker,* 267 Kan. at 831. When making either inquiry, this court should bear in mind that " '[t]he standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement.' " *Rucker,* 267 Kan. at 831.

In *State v. Bryan,* 259 Kan. 143, 910 P.2d 212 (1996), we cited *Grayned v. City of Rockford,* 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), to explain the reasons for the two inquiries.

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on a *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Bryan,* 259 Kan. at 145-46.

As previously mentioned, City Ordinance 11.38.150, the DUI ordinance, is quite similar to K.S.A. 8-1567. Both prohibit the intoxicated operation of vehicles. Hackett argues ambiguity surfaces because a city ordinance defines vehicles to include human powered devices, whereas state statute excludes them. Additionally, Hackett finds it significant that City Ordinance 11.48.160(b) states: "A person operating a vehicle by human power upon and along a sidewalk or across a roadway upon and along a crosswalk, shall have all the rights and duties applicable to a pedestrian under the same circumstances." He claims that since pedestrians may not be convicted of DUI, the same privilege should be extended to operators of human powered vehicles in such locations.

On its face, the city's ordinance is as clear as the state's statute. The city council simply has opted to control more expansive conduct, and the facts in the instant case demonstrate the council's decision happened to be well-founded. Here, Hackett was so inebriated he fell off of his bicycle in a city intersection, requiring the involvement of emergency medical personnel and law enforcement.

Additionally, the extension of Hackett's first argument would permit no differences between statutes and corresponding ordinances because, according to him, any differences would cause confusion and would be unconstitutional. This contention directly contradicts K.S.A. 8-2001, which expressly permits cities to enact nonconflicting traffic regulations to meet the unique needs of the community. This argument also ignores the test applied in void-for-vagueness cases, *i.e.*, whether a person of ordinary intelligence would be misled upon reading the city ordinance. "Vehicle" is a commonly used word and is to be given its ordinary meaning. See *City of Wichita v. Lucero,* 255 Kan. at 451. Webster's Third New International Dictionary 2538 (1993), defines it as, "a means of carrying or transporting something." The ordinary meaning is clearly consistent with the definition provided in the city ordinance which does not distinguish human-powered from motor-driven conveyances.

The same is true regarding his second argument. While we acknowledge that City Ordinance 11.48.160(b) provides that a bicyclist will have all the rights and duties applicable to a pedestrian in certain locations, it does not create ambiguity sufficient to mislead the person of ordinary intelligence who also reads the DUI ordinance. Furthermore, the pedestrian ordinance does not provide that the bicyclist will be considered a pedestrian for all reasons, including immunity from prosecution for any hazardous conduct. We agree with the court in *Commonwealth v. Sheriff,* 7 Pa. D. & C.4th 201, 206 (1990):

"It is clear that the bicyclist is, and should be, subject to the same duties as the automobile driver. The drunken bicyclist poses a danger to both himself and others who use the roads. A bicycle is certainly capable of making quick maneuvers

and swerving into oncoming traffic, causing motorists to take instant evasive action."

The city's ordinances convey sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding. *Boyles*, 271 Kan. at 72-73. They also convey sufficient clarity to those who apply the ordinance standards to protect against arbitrary and discriminatory enforcement. *State v. Bryan*, 259 Kan. at 146.

The district court is affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.