NOT DESIGNATED FOR PUBLICATION

No. 123,769

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RHEUBEN JOHNSON,
*Appellant*,

v.

DAN SCHNURR, et al.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed April 29, 2022. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant, and *Rheuben Johnson*, appellant pro se.

*Jon D. Graves*, legal counsel, Kansas Department of Corrections, for appellee.

Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Rheuben Johnson, an inmate, was disciplined for intentionally interfering with official duties of prison staff in violation of K.A.R. 44-12-320a. After exhausting his administrative remedies, Johnson petitioned for habeas corpus relief. The district court summarily dismissed the petition. Johnson now appeals, arguing insufficient evidence supports the disciplinary authority's decision, he was denied due process at his disciplinary hearing, and K.A.R. 44-12-320a is unconstitutionally vague and overbroad. After a review of the record, we disagree and affirm.

1

Johnson, an inmate housed at the Hutchinson Correctional Facility, was issued a prison disciplinary report on September 27, 2019, charging him with interfering with official duties in violation of K.A.R. 44-12-320a. The report alleged Johnson was "purposely submitting redundant paperwork with the intent to disrupt staff from their daily work." The report further alleged Johnson stated this intent to counseling staff "in order to gain what he wants within the facility." In addition to the statements made to staff, the report alleged Johnson had submitted six property claims in a single day, two of which were duplicates of a claim that had been previously answered by staff.

A hearing officer conducted a disciplinary hearing on the allegations and determined a preponderance of the evidence supported the allegations that Johnson intended to file excessive paperwork to keep prison staff from their duties. According to the prepared summary of the disciplinary hearing, which is the only evidence of the hearing in the record, the reporting officer and two fellow officers testified that they witnessed Johnson say he intended to bury the staff in paperwork. Johnson also testified and denied such intent. The parties submitted additional evidence, including copies of Johnson's six claims and an email from the prison behavioral health specialist speaking to Johnson's mental health. Ultimately, Johnson was found guilty of interfering with official duties, fined $10, and sentenced to 30 days' restriction from privileges.

Johnson appealed the disciplinary officer's decision to the secretary of corrections, who approved the hearing officer's decision because it was based on "some evidence."

Johnson then petitioned the district court for a writ of habeas corpus pursuant to K.S.A. 2019 Supp. 60-1501. In his petition, Johnson alleged he was wrongfully convicted of violating K.A.R. 44-12-320a and submitted 10 claims for relief. The district court summarily dismissed Johnson's motion, finding "the combination of [Johnson's] actions

and the statements of his intent, along with the email from his mental health counsel, act as more than 'some evidence' to support disciplinary conviction."

More than three months after the district court dismissed his petition, Johnson sought the recusal of the district judge who decided his case. After a hearing, the district court denied Johnson's motion on the grounds that because his motion was filed after a final decision had been made, the issue was "essentially moot." The district court also found it lacked a legitimate ground to grant Johnson's requested relief to set aside the judgment and assign a new judge for a new hearing.

Johnson appeals.

I.    DID THE DISTRICT COURT ERR IN SUMMARILY DISMISSING JOHNSON'S PETITION?

K.S.A. 2020 Supp. 60-1501(a) allows "any person in this state who is detained, confined or restrained of liberty" to petition a court for a writ of habeas corpus. "To avoid summary dismissal of a K.S.A. 60-1501 petition, the petitioner's allegations must be of shocking and intolerable conduct or continuing mistreatment of a constitutional stature. [Citation omitted.]" *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). Summary dismissal is proper if, on the face of the petition, it can be established the petitioner is not entitled to relief, or if, from undisputed or incontrovertible facts, it appears as a matter of law that no cause for granting a writ exists. Our review of a district court's summary dismissal is unlimited. 289 Kan. at 648-49.

On appeal, Johnson argues the district court erred in summarily dismissing his K.S.A. 60-1501 petition on three grounds. First, he argues the district court failed to make sufficient findings of fact and conclusions of law. Second, he argues the district court lacked sufficient evidence to convict him of violating K.A.R. 44-12-320a. And third, Johnson contends his disciplinary hearing violated his due process rights.

3

A.     *The district court's findings were sufficient for appellate review.*

Three months after the district court denied his K.S.A. 60-1501 motion, and after he had filed a notice of appeal with this court but prior to the docketing of his appeal, Johnson moved the district court for findings of fact and conclusions of law. Johnson's motion claimed the district court violated K.S.A. 2020 Supp. 60-252 because it did not provide findings of fact and conclusions of law regarding 7 of his 10 claims. On appeal, Johnson argues the record prevents us from the reviewing the district court's decision.

The substance of Johnson's argument is that the district court failed to comply with Supreme Court Rule 165 (2022 Kan. S. Ct. R. at 234) and K.S.A. 2020 Supp. 60-252. Rule 165(a) imposes upon the district court the duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. However, a party must object to inadequate findings and conclusions to preserve this issue for appeal. Such objections are necessary to provide the district court an opportunity to correct any alleged inadequacies. Where there is no objection, we presume the district court found all facts necessary to support its judgment. *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016).

Johnson contends he preserved this challenge for appeal because he filed a motion for findings of fact which served as an objection below. He may be right about that as the district court retains jurisdiction over a case until the appeal is docketed. See *Hundley v. Pfuetze*, 18 Kan. App. 2d 755, 757, 858 P.2d 1244 (1993). But a lack of findings in the record must preclude meaningful appellate review to warrant a remand. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Before us, Johnson challenges the district court's findings as they relate to the sufficiency of the evidence and due process:  "[The district judge] does not state what evidence he was relying on that [Johnson] violated the regulation or that his actions did in

4

fact interfere with their duties. [The district judge] basically summarily affirmed their findings without stating on the record what evidence was used to confirm those findings." Our review of the record reveals no inadequacy preventing appellate review of these issues. Thus, even assuming Johnson has preserved the issue of the adequacy of the district court's findings on appeal, a remand is not necessary. See *Turner v. State*, No. 118,932, 2019 WL 325218, at * 4 (Kan. App. 2019) (unpublished opinion) (record sufficient for appellate review). Accordingly, we turn to the merits of Johnson's appeal.

B.      *Some evidence supports Johnson's violation of K.A.R. 44-12-320a.*

Next, Johnson argues the evidence was insufficient to show he violated K.A.R. 44-12-320a. He contends the record lacks evidence to support the finding that he submitted six claims and the evidence was insufficient to show he intended to disrupt the duties of prison officials.

A challenge to the sufficiency of the evidence in a prison disciplinary proceeding is reviewed for "'some evidence'" to support the correctional tribunal. *May v. Cline*, 304 Kan. 671, 674, 372 P.3d 1242 (2016). Determining whether this standard is satisfied does not require the reviewing court to examine the entire record, make an independent assessment of witness credibility, or reweigh the evidence. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [authority]." *Sammons v. Simmons*, 267 Kan. 155, Syl. ¶ 3, 976 P.2d 505 (1999).

Here, the disciplinary authority held the preponderance of the evidence showed it was more likely than not that Johnson violated K.A.R. 44-12-320a, which states:  "No inmate shall intentionally disrupt, sabotage, impede, or interfere with the performance of official duties by any officer, employee, or contract employee."

To find Johnson violated K.A.R. 44-12-320a, the hearing officer reasoned: "Based upon the preponderance of the evidence in which the witnesses testified that the inmate told them he was going to file excessive paperwork to keep them from their duties, it is more likely than not, in the hearing [officer's] opinion, true the incident did happen . . . ."

Although the record is sparse and lacks a transcript of the disciplinary hearing, some evidence contained in the record nevertheless supports the conclusions by the hearing officer that Johnson intended to disrupt staff with his excessive paperwork. The summary of the disciplinary hearing details most of the evidence that supports the disciplinary authority's decision. The summary states that the reporting officer, named as CCII Hays, testified Johnson told three staff members that he was going to file excessive paperwork: "'He told Schneider during one of the first interviews. Unit Team Ruiz & Pettijohn ask[ed] him what his goals were. He told them he was going to file all this paperwork.'" The summary later notes that Pettijohn and Ruiz both testified to the same: "Pettijohn stated, 'Yes, [Johnson] said he would keep us busy with extra paperwork.' . . . Ruiz stated, 'That's pretty much what he said.'"

The record also contains some evidence to support the conclusion that the amount of paperwork was excessive. In his request for the witness testimony of Robert Hartmann, who appears to be Johnson's mental health counselor, Johnson alleged Hartmann would testify that Johnson did not intend to disrupt staff by filing paperwork, but, rather, "[Hartmann] has determined that Johnson files paperwork for 2 reasons: (1) he feels the need to complain about issues, and (2) to relieve anxiety from various causes, e.g., PTSD." But in the same request, Johnson seemed to concede filing an excessive amount of claims when he stated: "Johnson has sought help from [Hartmann] numerous times, to end filing paperwork, stating that paperwork is not what he wants to do."

6

Hartmann's responding email testimony provides more evidence to support the conclusion that Johnson's paperwork was excessive, indicating Johnson was aware his paperwork was excessive and problematic:

> "What I could offer is the psychological motivation for his excessive number of communications. This appears to be a way to manage his anxiety. However, the psychological understanding of the situation does not justify his actions; it only explains them. He has been told that his behavior is problematic even while meeting a psychological need. He has been offered alternative to the excessive communications, but has not been open to the suggestions."

Johnson points to pieces of evidence in the record that he believes support his insufficient evidence argument, but reaching the result Johnson asks from us would require us to improperly reweigh the evidence and ignore the "'some evidence'" standard of review. See *May*, 304 Kan. at 674. As shown, there was some evidence supporting the disciplinary authority's decisions to find Johnson guilty of violating K.A.R. 44-12-320a and to impose sanctions.

C.    *Johnson's hearing did not deprive him of due process.*

In his last argument challenging his discipline, Johnson contends he was denied due process during his disciplinary hearing. It appears Johnson argues his due process rights were violated in two ways. First, he was not permitted to cross-examine the witnesses against him. Second, he was denied a fair trial because the hearing officer presiding over the disciplinary hearing was also the charging officer.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution proscribes states from "depriv[ing] any person of life, liberty or property without due process of law." We apply a two-step analysis to determine whether an inmate received the protections of due process. First, we must decide whether the State

7

deprived the inmate of life, liberty, or property. Second, if so, then we must determine the extent and nature of the process to which the inmate is entitled. *Johnson*, 289 Kan. at 649.

The prison concedes the $10 fine imposed as a sanction against Johnson for his violation of K.A.R. 44-12-320a is sufficient to meet the first prong of the two-step analysis. We agree. See *Anderson v. McKune*, 23 Kan. App. 2d 803, 807, 937 P.2d 16 (1997) ("The extraction of a fine does implicate the Due Process Clause even when . . . the State has taken only a small amount from an inmate's prison account. [Citation omitted.]"). We next consider "the extent and the nature of the due process due." *Johnson*, 289 Kan. at 649.

Johnson first argues his hearing violated his due process rights because he was not allowed to cross-examine the witnesses against him and, therefore, was denied his opportunity to be heard. The United States Supreme Court has stated that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Similarly, K.A.R. 44-13-101(c) provides that, among other things, inmates are entitled to call witnesses, confront and cross-examine witnesses, and present documentary evidence, subject to certain limitations.

Johnson contends he was not afforded an opportunity to cross-examine the witnesses testifying against him because "this was done outside his presence." But this statement is not supported by the record. According to the hearing summary, Johnson was sworn at the hearing, as were the three officers who testified against him. And although the summary does not provide an exact transcript of the record, it nevertheless shows Johnson was able to confront or cross-examine Hays at the hearing:

"The hearing officer ask[ed] Hays who Johnson allegedly told he would file excessive paperwork to. Hays answered 'He told Schneider during one of the first interviews. Unit Team Ruiz & Pettijohn ask[ed] him what his goals were. He told them he was going to file all this paperwork.' *Johnson replied: 'I never said any of that.'* Hays stated 'I know from other staff that he told them this. He sent the property claims to the Warden's office. The Warden sent them to us to be notarized.' *Johnson stated 'And I sent them to you to get notarized.'* Hays stated 'The claims have been dealt with.'" (Emphases added.)

The emphasized language shows that not only was Johnson present at the time of the hearing when the officers testified against him, but he also confronted Hays during the hearing. Admittedly, there is nothing in the record to show Johnson cross-examined the two other officers. But there is also nothing in the record to show he was prevented from doing so. As the party making the claim, Johnson has the burden to designate a record sufficient to present his point and establish his claims. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Johnson has failed to meet his burden to show he was not afforded an opportunity to cross-examine the witnesses against him.

In this vein, Johnson also briefly argues he was not given the opportunity to cross-examine his own witness, Hartmann. But Johnson has not provided any authority to support his position that due process affords him such opportunity. Moreover, K.A.R. 44-13-307(e) provides that the appearance of a witness requested by an inmate "shall be voluntary, and neither the request nor the issuance of summons according to this regulation shall compel an appearance." The record does not support Johnson's claim that he was denied the opportunity to cross-examine witnesses.

D. *Johnson has failed to designate a record sufficient to support his remaining due process claims.*

Next, Johnson argues he was denied due process because he was not shown the six property claim forms he had prepared prior to the hearing and, therefore, he could not adequately prepare a defense. It is unclear from Johnson's argument what due process right he believes he is entitled to, and Johnson does not point to any law or regulation that requires the disciplinary authority to present inmates with such evidence prior to the hearing. We reject this claim as being inadequately supported. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (failure to support point with pertinent authority akin to failing to brief).

Finally, Johnson complains the hearing officer was the also the reporting officer, allegedly in violation of K.A.R. 44-13-404. Johnson contends:

"The hearing officer was the charging officer. The testimony provides that CCII Hays was sworn in as the reporting officer. The Disciplinary Report finding Johnson guilty was signed by the hearing officer, CCII Hays. It is apparent that the charging officer and the hearing officer were one in the same."

This argument is not supported by the record. Although Johnson correctly argues Hays was the reporting officer, there is nothing in the record to suggest Hays was also the hearing officer. The hearing record contains a signature of the hearing officer, but the officer's name is never clearly spelled out in the record. Even so, the name is not Hays. Moreover, the quoted language from the hearing summary clearly shows the officers were different people. The summary states: "The hearing officer ask[ed] Hays who Johnson allegedly told he would file excessive paperwork to."

Given the differing signatures and the language contained in the hearing summary, we are unpersuaded that Johnson's reporting officer and the hearing officer were the same person. We see insufficient evidence in the record that Johnson was denied due process at his disciplinary hearing.

II.     IS K.A.R. 44-12-320a UNCONSTITUTIONALLY VAGUE AND OVERBROAD?

Finally, Johnson argues K.A.R. 44-12-320a is unconstitutional because it is vague and overbroad. He maintains that K.A.R. 44-12-320a is vague because the regulation lacks definitions to effectuate adequate notice. He also contends that the lack of definitions "permits the facility to create a violation of virtually everything an inmate might or might not do" and allows for arbitrary enforcement. Johnson argues that is what happened in this case.

Properly promulgated administrative regulations have the force and effect of law. K.S.A. 77-425. Administrative regulations are presumed to be valid, and one who challenges them has the burden of showing their invalidity. *Mitchell v. Petsmart, Inc.*, 291 Kan. 153, 168, 239 P.3d 51 (2010). The party asserting the unconstitutionality of a regulation "has a weighty burden." See *State v. LaPointe*, 309 Kan. 299, 315, 434 P.3d 850 (2019) (applying "weighty burden" to challenging unconstitutionality of statute); *Steffes v. City of Lawrence*, 284 Kan. 380, 388-89, 160 P.3d 843 (2007) (applying "weighty burden" to proving unconstitutionality of city ordinance).

"Determining whether a regulation meets constitutional muster requires statutory interpretation, which is a question of law over which this court has unlimited review. [Citation omitted.]" *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 323, 291 P.3d 1056 (2013). Interpretation of an administrative regulation also presents a question of law. *Woessner v. Labor Max Staffing*, 312 Kan. 36, 45, 471 P.3d 1 (2020).

11

The fundamental rule of statutory construction—which also applies to agency regulations—is that we are to give effect to the agency's intent in promulgating a regulation. That intent is to be drawn from the plain meaning of the measure's language if at all possible. See *State v. Smith*, 309 Kan. 929, 932-33, 441 P.3d 472 (2019). Moreover, we should avoid imputing an unreasonable meaning to the language that would lead to an implausible or absurd result. *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015).

"When, as here, a regulation is claimed to be unconstitutionally vague, we must determine (1) whether the regulation conveys a sufficiently definite warning and fair notice of the proscribed conduct in light of common understanding and practice and (2) whether the regulation adequately guards against arbitrary and discriminatory enforcement. See *Steffes v. City of Lawrence*, 284 Kan. 380, 389, 160 P.3d 843 (2007)." *Roeder v. Kansas Dept. of Corrections*, No. 113,239, 2016 WL 556281, at \*7 (Kan. App. 2016) (unpublished opinion).

And when a regulation is claimed to be constitutionally overbroad, the challenge may succeed "'only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications.'" *Dissmeyer v. State*, 292 Kan. 37, 40-41, 249 P.3d 444 (2011).

While Johnson cites the law regarding what constitutes an overbroad regulation, he presents no argument as to why K.A.R. 44-12-320a is unconstitutionally overbroad. He solely challenges the regulation as being vague. Thus, Johnson has waived any argument that K.A.R. 44-12-320a is overbroad. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (issue not briefed deemed waived or abandoned).

In reiterating that an ordinance must convey a sufficient definite warning, the *Steffes* court—relying on *City of Wichita v. Hackett*, 275 Kan. 848, 69 P.3d 621 (2003)— summarized the standard:

12

"'"A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." Kansas has long held, however, that a statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or having a settled meaning in law.' 275 Kan. at 853-54." *Steffes*, 284 Kan. at 389.

Again relying on *Hackett*, the *Steffes* court discussed the rationale of inquiring whether an ordinance is adequately defined and guards against arbitrary and discriminatory enforcement:

"'"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." [Citation omitted.]' *Hackett*, 275 Kan. at 854." *Steffes*, 284 Kan. at 389.

K.A.R. 44-12-320a, again, provides that "[n]o inmate shall intentionally disrupt, sabotage, impede, or interfere with the performance of official duties by any officer, employee, or contract employee." Johnson's challenge to the vagueness of the regulation is solely based on the proposition that the terms within the regulation need to be defined. He argues:  "For instance, what does impede mean in this situation? What does sabotage mean? Disrupt can be very minor or something major, it is unclear what is required in this situation." But his questions are insufficient to show the regulation is vague as it uses words that are in common usage and understanding. Given that many regulations and statutes use common words without them being defined, to declare K.A.R. 44-12-320a as

13

unconstitutionally vague on that basis would lead to an unreasonable outcome. See *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013).

K.A.R. 44-12-320a does not cause persons of common intelligence to guess at its meaning. And the regulation conveys a sufficient definite warning and fair notice as to what conduct is prohibited. K.A.R. 44-12-320a is not unconstitutionally vague.

Affirmed.